FILED
8/17/2017
THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT

RECEIVED
LCW
JUL 24 2017
THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT

IN THE NORTHERN DISTRICT OF ILLINOIS FEDERAL DISTRICT COURT

| | |
|---|---|
| In Re: The Estate of Louise K. Hahn deceased 10/05/2003 | )<br>)<br>) |
| Eloise K. Hahn, Plaintiff | )<br>) No.<br>) |
| vs | )<br>)<br>) |
| Bank of America Successor In Trust to LaSalle Bank, Chicago, IL | )<br>)<br>) |
| Stifel, Chicago, IL | )<br>) |
| Herman Marino, Esquire | )<br>) |
| Defendants. | )<br>) |

17 CV 5434
JUDGE ALONSO
MAGISTRATE JUDGE COLE

## COMPLAINT

The Plaintiff, Eloise K. Hahn, files her complaint prose to report a financial crime pursuant to 31 USC. Plaintiff files her complaint to report a bank and brokerage firm crime pursuant to 12 and 31 USC.

Plaintiff most recently was advised by IRS her identity had been stolen for tax matters pursuant to 26 USC. Plaintiff requests the assistance of this honorable court to ascertain the extent of the repeated incidences of identity theft to her beloved mother's security assets at Bank of America Successor In Trust to LaSalle Bank in Chicago, IL and US Trust in Boston, MA in years 2006 through 2017, including any and all illegal estate tax and personal tax refunds of Plaintiff's sanctioned by Marino and his clients, Thomas A. Minor and William R. Parsons, who are presumed to have stolen Plaintiff's identity to report a big loss to the estate in efforts to collect the huge tax payments Plaintiff had remitted in the amount of $2,118,799. Plaintiff was forced to liquidate the family farm of 820 acres in the State of Illinois

in year 2004, where the estate incurred in excess of $100,000 in settlement costs to acquire the funds for the estate tax. LaSalle Bank at all times continued to allege its holdings of $1,636,666 instead of $1,494,888 + $1,636,666. Plaintiff concludes they did so since the family had liquidated the farms to pay the estate taxes.

MEMORANDUM IN SUPPORT OF FINANCIAL CRIME PURSUANT TO 31USC

The estate return was filed in June of 2004. A copy of the estate return is hereto attached in Exhibit A, a copy of which is hereto attached. The estate return reflected $1,636,666 in assets. $1,494,888 of assets were conveyed to Comerica Bank in Minneapolis, MN in June of 2004 minus two $15,000 fees and a $750,000 estate tax leaving approximately $365,000 to two subtrusts for the benefit of Plaintiff and her late brother, Bradley J. Hahn. An additional $8,121 was further conveyed to the the two subtrusts at Comerica Bank. A copy of Plaintiff's account statement is hereto attached, namely Comerica Bank & Trust, N.A. Trustee of the Louise K. Hahn Irrevocable Trust Agreement FBO Eloise K. Hahn dated 2/6/2003, account no. 4015008042. At all times the former fuciary trustee, LaSalle Bank, claimed all assets had been conveyed to the subtrusts at Comerica Bank. They failed to disclose their holdings of the remaining securities.

Plaintiff was requested to remit payment for the funeral expense, including payment for the tax preparation fee for $1,400 + $1,000 from the probate account which Plaintiff acquired from the Illinois farm rents for $146,000 mol. The probate account was exempt from taxation in the amount of $145,400, namely unified State credit. Willis appropriated his fee from the farm rents for $30,500, and $10,000 to Plaintiff. The remainder was used for a medical bill in the amount of $1,520 in year 2005, as well as, the bondsman in the amount of $7,555, incl;uding the funeral expense for $12,019

and the tax preparation fees for $2,400 leaving a balance of $80,000 which was split between Plaintiff and her late brother, Bradley. The estate attorney, Kevin Willis, however, kept the estate open due to a refund the IRS had conveyed back to the estate for $199,201 in late 2004. Plaintiff concludes the difference of the two amounts namely $1,636,666 minus $1,494,888 or $141,778 + the expenditures of the estate being $30,500 attorney fees + $14,400 administrator fees + $12,019 funeral expenditures + $2,400 tax preparation fees or $201,097 mandated the refund for $199,201.

    Plaintiff engaged in a Virginia bankruptcy trial in year 2014 concerning the debt of $220,700 she had authorized from her former Stifel brokerage account in Chicago in March of 2006. The debtor, Thomas A. Minor, had filed a chapter 7 bankruptcy with his spouse, Renee Scott Minor, in year 2010. Plaintiff was not notified of the bankruptcy nor listed on the 2010 petition. In June of 2014, Minor amended his chapter 7 petition where he listed Plaintiff and Burke Financial LLC. Plaintiff dba Burke Financial LLC where she authorized a $220,700 electronic payment to Win Par Hospitality Laredo LLC on March 31, 2006. In April of 2006, Plaintiff received a stock certificate from William R. Parsons, dba Manager and President of Win Par Hospitality Laredo LLC. In late April of 2006, Parsons and Minor flew to Chicago to advise Plaintiff that the LLC had $447,000 and she would not be required to deposit any remaining money to Win Par with respect to her 18.2 percent interest in the entity, Win Par Hospitality Laredo LLC. At the time of the meeting, Parsons nor Minor, disclosed to Plaintiff that they had conveyed her money to their respective individual names instead of the LLC.

    Plaintiff presumes they met with her in Chicago to conduct business at LaSalle Bank in Chicago. This conclusion became apparent when the Virginia

bankruptcy trial judge, Chief Justice Keith L. Phillips, rendered his decision on March 30, 2015, a copy of which is hereto attached in Exhibit B. The lengthy decision alleged Minor being discharged up to $1.8 million where he alleged he acquired the money from a TRUST. Plaintiff did not hold $1.8 million in a TRUST but her late mother had held securities from Charles Schwabb account nos., 4009-3553 and 4010-4769, including Merrill Lynch assets which had been merged into Charles Schwabb account no. 4010-4769 which equated in excess of $1.8 million.

Upon receipt of the court ruling, Plaintiff continued to search for the LaSalle Bank security statement which she acquired from U.S. Trust in Boston sometime between April through May of 2015. Upon receipt of the statement, Plaintiff forwarded a copy to Willis. Subsequently, Plaintiff inquired who had received the excess securities. Plaintiff was advised that the two parties, Minor and Parsons, alleged heirship to the assets in year 2007 and were intrigued with fraudulently listing all the security amounts on their respective tax returns where they illegally acquired a dynasty of wealth fraudulently. Bank of America is listed on Parsons and Minors' respective bankruptcy petitions for notice only, where Parsons lists a $40,000 set-off on an alleged loan in order that he offset the $45,000 in fees the estate paid. Plaintiff never authorized any of these transactions nor did the alleged Burke Financial LLC entity. Bank of America apparently allowed these conveyances illegally. The irrevocable trust documents the names, Bradley and Eloise as the designated heirs. All equities were to be transferred to Comerica by June of 2004. Apparently LaSalle Bank defrauded the heirs, including Bank of America, Marino, Win Par, Parsons, and Minor. The dynasty of wealth took a lifetime to accumulate, including the Naperville holding of vacant land for over 37 years. No wonder why Plaintiff has no money for FOOD, with the loss of her

ownership to 820 acres of Class A farmland in Lee and Ogle counties in the State of Illinois, along with the mobs efforts to interfere with Plaintiff's former employment as an Environmental Engineer for the United States government where they repeatedly terrorized her with the repeated grand thefts to her securities at Stifel and now the bank, as well as, her personal tax payments for years 2003 through 2011. Who would have even survived these thefts and exploitations. None of the immediate family have other than Plaintiff, which explains the continued efforts by the syndicate and bank to expunge Plaintiff as well, including her two immediate children who apparently are victims to an insurance skam.

Plaintiff concludes the parties, Minor and Parsons, ILLEGALLY declared heirship to irrevocable trust assets of her late mother's securities violating the ESTATE STAY, as well as, hacked her former living trust brokerage securities at Stifel where they were instructing the margin department to wire each of them numerous equity amounts churning Plaintiff's brokerage account into insolvency where they illegally acquired asset holdings of $487,886 consignant with Plaintiff's farm check she had acquired for $487,727 after remitting a 55% estate tax for the proceeds. Plaintiff's capital gains were sanctioned as well, including her personal tax payments to the IRS contributing to a nightmare of financial exploitations and repeated identity theft incidences to date. Plaintiff hereby sues for personal injury due to the repeated robbery incidences and financial exploitations to her identity and securities, including tax matters.

A copy of the security statement for the Louise K. Hahn Irrevocable Trust account no. 26-9156-40-2, along with a copy of Charles Schwabb account no. 4010-4769, is hereto attached in Exhibit C. Charles Schwabb account no. 4010-4769

account statement documents a GNMA market value of $350,000 + $53,528 ammoritization + $17,141 equity change + $18,818 dividends and interest, and a GNMA principal payment of $9,510. When you add the $18,818 + $17,141 + $53,528 to the $1,189,320 in stock equity the balance equates to $1,234,789, as reflected on the bank summary. A $360 deduction from the $1,234,789 equates to the balance reflected of $1,234,361. A $2,392 deduction leaves an equity balance of $1,232,037. $1,232,037 - $975,509 - $80,182 or $895,325 in stock equity was transferred to Comerica Bank. Another $198,804 is reflected as transferred to Comerica in years 2003-2004, or $198,804 in fixed income equities. The $198,804 is acquired from $200,000 in excess stock equity (see above), leaving an excess for $57,734 in stock equity. $895,325 + $198,804 equates to $1,094,129. Bond equities are reflected as liquidated in the amounts for $56,698 + $56,506 + $50,921 + $66,100, along with a GNMA payment for $34,424 equating to a subtotal balance of $1,358,778. Another $104,575 in Nuveen Fixed Income Bond Fund is transferred, including $19,893 in Nuveen Premium Income Municipal Fund or a subtotal of $1,483,246. The Scudder Japan Fund for $604 + the LaSalleColumbia Strategic Income Fund is liquidated for $27,543 equating to a subtotal balance for $1,511,393. $1,494,888 is listed as transferred, along with $8,121 in interest payments or a total of $1,503,009. $1,511,393 - $1,494,888 equates to $16,505 in excess equity. The $16,505 of equity is further reduced by the loss of equity in the fixed income fund liquidation for $1,196. Subtracting $1,196 from the $16,505 in equity equates to $15,409. The excess amount is further reduced by the raised carrying value amount loss for over $14,000.

    The Mid America check amount for $531 plus the deposits for $371 + $150 + $16 are not transferred nor is the $350,000 GNMA principal amount + $53,528 + $17,141 + $18,818 in dividends and interest or $440,555. $440,555 is documented

as miscellaneous receipts. Hawthorne for $161 is not transferred nor is the GNMA principal amounts for $7,980 + $7,888 + $2,008 + $616 + $54 or $18,707. Another $32 equates to $18,739 which is reflected on the bank summary as $2,018,739. A $1,050 deduction is reflected from that amount equating to $2,017,689. $2,017,689 + $440,555 equates to $2,458,244. Another excess for $43,059 is documented to raise the carrying value of the $440,555 to $483,614. A $30,680 money market balance + $15,975 + $7,141 to the $483,614 equates to $537,410. Interest payments for $1,293 + $2,729 + $5,653 equates to $9,675. $537,410 + $9,675 equates to $547,085. $26,817 + $547,085 equates to $573,902. The Berwyn bungalow proceeds and the Charles Schwabb money market amount for $167,568 are not transferred nor are the total Charter bank deposits for $154,114. Excesses for $26,817 + $13,106 + $15,975 + $7,141 were not transferred to Comerica nor were the dividends and interest equity amounts for $5,623 + $2,729. The excess for $43,059 is a composite of equities for $31,253 + $9,510 + $2,008 + $209 + $66 + $13.

    Plaintiff concludes the bank was holding in excess of $1,600,000 which was acquired by the syndicated parties which includes $233,340 in bond equities. The excess for $1,600,000 is an excess equity amount acquired from tax refund payments for $211,000 + $13,445 + $6,660 + $2,530, along with the estate expenses for $159,844 or a total equity amount of $393,479. The excess for $5,112 equates to $398,591. Lot 13 in Laredo TX was purchased by Win Par for $395,743 in year 2006. Apparently Parsons is alleging ownership to this entire dynasty of wealth illegally where he reports the estate incurring a big loss in excess of $4,900,000 where he is assumed to have acquired the estate tax payments illegally, including the stolen equity amounts.

    The financial crime has resulted in injury to Plaintiff. Plaintiff feels entitled to

sue the syndicated franchises for $24,000,000 million in damages due to the nondisclosures of defendants and the construction of no less than three hotels from the stolen equity domestically, including nine or ten hotels in India in years 2009-2010 where Plaintiff was advised Singh replaced her but apparently failed to remit payment to her for the stolen equity Parsons and Minor robbed and subsequently discharged illegally to the estate of her dear beloved parents. Parsons also holds international holdings off-shore in Australia with numerous domestic holdings. Apparently, Marino acts as agent for the unadministered estate which now must be liquidated.

WHEREFORE, Plaintiff requests this honorable court's assistance for an expedited hearing on this matter for resolution.

Respectfully submitted,

*Eloise K. Hahn*

Eloise K. Hahn, Administrator
313 East 1300 North
Chesterton, IN 46304

CERTIFICATE OF SERVICE

I, Eloise K. Hahn, do hereby certify that I personally filed a copy of the subject complaint, including Exhibits A-D on July 14, 2017, in the Northern District of Illinois Federal District Court, being:

Northern District of Illinois Federal District Court
219 S. Dearborn St, 21st Floor
Chicago, IL 60604

I, Eloise K. Hahn, do hereby certify that I mailed a copy of the subject complaint to the State of Illinois Appellant Court for the First District at 160 N. LaSalle St., Attn: Steve Rand, Clerk of the Court, Room S1400,

Chicago, IL 60601, along with copies to:

    Herman Marino, Esquire
    53 W. Jackson Blvd
    Room 1557
    Chicago, IL 60604

    McGuire & Woods
    Attn: Helen Arnold, Esquire
    77 W. Wacker Drive, Suite 4100
    Chicago, IL 60601

*July 24, 2017*      *[signature: Elaine A. Wood]*


Department of the Treasury
Internal Revenue Service

~~Stop 6525 (SP CIS)~~
~~Kansas City MO 64999-0025~~

In reply refer to: ~~0125084003~~
~~July 03, 2017~~  LTR 131C 1
~~322-~~-4890 201512 30
00001248
BODC: SB

ELOISE K HAHN
313 E 1300 N
CHESTERTON IN 46304

Taxpayer identification number: ~~XXX-XX~~-4890
Tax period: Dec. 31, 2015
Form: 1040

Dear Taxpayer:

Thank you for the inquiry dated June 03, 2017.

We need more information to answer your questions.

Please explain your problem in detail and send us any information you believe would be helpful, such as copies of correspondence or notices relating to your situation.

Return this letter, with your original inquiry, within 30 days from the date of this letter. If we don't hear from you, we can take no further action on your account. We have enclosed an envelope for your convenience.

You can get most IRS forms or publications you need from our website at www.irs.gov/formspubs or by calling 1-800-TAX-FORM (1-800-829-3676).

If you have questions, you can call us at 1-800-829-0922.

If you prefer, you can write to us at the address shown at the top of the first page of this letter.

When you write, include this letter and provide in the spaces below, your telephone number with the hours we can reach you.
Keep a copy of this letter for your records.

Telephone number (219) 628-5481    Hours 24 hrs.

Thank you for your cooperation.

*I didn't submit an inquiry on 6/3/2017.*

**IRS** Department of the Treasury
Internal Revenue Service

IRS
FRESNO    CA    93888-0025

In reply refer to: 1176225406
Mar. 24, 2017  LTR 4674C  0
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   000000 00
                     00019823
              BODC: SB

ELOISE K HAHN
313 E 1300 N
CHESTERTON IN  46304-9612

Taxpayer identification number: 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
Tax periods: Dec. 31, 2015
Form: 1040

Dear Taxpayer:

## WHY WE ARE SENDING YOU THIS LETTER

We verified your claim of identity theft.

We placed an identity theft indicator on the first TINs listed above to monitor activity and help prevent future fraud.

An identity theft indicator flags any future tax return submitted with your SSNs (or ITINs). We review those returns to ensure that someone else doesn't use your SSN (or ITIN) to file tax returns. Disclosure laws prohibit us from revealing information about any individual using your SSNs (or ITINs).

If you want to receive the additional security of an IP PIN immediately, visit www.irs.gov/getanippin, verify your identity, and retrieve your IP PIN to file your federal tax returns. If you get your IP PIN online, you will no longer receive an IP PIN by mail. You must login each year to obtain your new IP PIN.

## WHAT YOU SHOULD DO NOW

Because we found that your identity may have been misused for tax purposes, we suggest that you monitor your financial accounts. If you notice any suspicious or unusual activity on any of your financial accounts, you should report it immediately by doing the following:

1) If you moved and your address of record changed, notify us immediately to update your address.

2) Contact your financial institutions if you notice or have noticed suspicious or unusual activity on any of your financial accounts.

3) Contact the fraud department of one of the three major credit bureaus: